AUSTER OIL & GAS, INC.,
Plaintiff–Appellant,
Cross–Appellee,

v.

Matilda Gray STREAM, et al.,
Defendants.

AETNA CASUALTY & SURETY CO.,
Defendant–Third Party
Plaintiff–Appellee, Cross–Appellant,

v.

Edward M. CARMOUCHE, Third Party
Defendant–Appellant, Cross–Appellee.

No. 89–4336.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1990.

William B. Monk, Wm. E. Shaddock, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, LA., for Auster.

Ledoux R. Provosty, Jr., F. Rae Swent, Alexandria, LA., Richard A. Curry, Shannan Sweeney Rieger, Rubin, Curry, Colvin & Joseph, Baton Rouge, LA., Michael G. Lemoine, John A. Bivins, Roy, Carmouche, Bivins, Judice, Henke & Breaud, Lafayette, LA., for Carmouche.

Before JOHNSON, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Edward M. Carmouche and Auster Oil & Gas, Inc. ("Auster") each brought a third-party claim against appellee Aetna Casualty & Surety Co. ("Aetna") as insurer for Auster's claims against Carmouche. Carmouche and Auster appeal from the district court's summary judgment in favor of Aetna dismissing their claims. Aetna appeals the district court's denial of its motion for summary judgment on the issue of whether the subject Aetna insurance policies provide coverage for the damages to be awarded in this case. We affirm in part and reverse and remand in part.

### I. *Facts and Prior Proceedings*

This appeal considers the latest development in the protracted litigation of appellant Auster Oil and Gas, Inc.'s civil rights claims under 42 U.S.C. § 1983 against various parties, including appellant Carmouche.

In 1971, Auster obtained an oil, gas, and mineral lease from Matilda Gray Stream and M.G.S. Lake Charles Inc., who retained royalty interests in the lease.

In the early 1980's the Louisiana state police began a criminal investigation, conducted by Trooper Al Martin, into allegations of oil theft from the lease. In July 1983, the police closed its investigation without bringing charges. Carmouche, the attorney for the Streams and M.G.S., continued his own investigation. Joined by Trooper Martin, Carmouche devised a plan to place microdots in Auster's oilfield pipeline in order to track the movement of the oil. On September 25, 1983, several of Carmouche's agents inserted the microdots

while Martin and other Louisiana state police officers kept watch. No search warrant had been sought or obtained.

The plan, however, failed. The microdots stuck in the wellheads and pipelines, damaging Auster's equipment. They caused leaks in several barrels of oil, and allegedly damaged the underground formations to such an extent that all production from one well was lost.

In December 1983, Auster filed suit under § 1983, alleging that Mrs. Stream, M.G.S. and Trooper Martin had conspired to conduct an unlawful search and seizure in violation of the Fourth Amendment.

The district court denied Auster's motions to amend and dismissed Auster's suit for failure to state a claim under § 1983. On appeal, we held that Auster's allegations that Mrs. Stream and M.G.S. had acted "in concert" with state officers were sufficient to support a claim of state action under § 1983. We also held that Auster should have been granted leave to amend. We then remanded the case for trial.[1] *See Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381 (5th Cir.1985) (*"Auster I"*).

In March 1986, a jury found Carmouche and most of the other defendants liable, and awarded Auster compensatory and punitive damages. Last year, this Court affirmed the liability of Carmouche and the others. *See Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597 (5th Cir.1988) (*"Auster II"*). Due to several flaws in the jury damages award,[2] we remanded for a new trial on the issue of damages. With the exception of Carmouche, all defendants subsequently either settled with Auster or were dismissed on remand.

In this latest go-round, appellant Carmouche filed a third party complaint against Aetna, asserting that he was a named insured under two liability insurance policies taken out by his employer, Matilda Gray Stream. One policy was a primary Comprehensive General Liability Policy. The other was an Excess Indemnity ("umbrella") policy.

Auster consequently amended its complaint to name Aetna as a defendant pursuant to Louisiana's Direct Action statute, L.S.A. R.S. 22:655. Aetna answered the complaints, denying that the policies covered Auster's claims against Carmouche, and asserting a defense of late notice.

In a memorandum ruling, the district court granted summary judgment in favor of Aetna, dismissing both Carmouche and Auster's claims because of the failure of Carmouche to give Aetna timely notice of the original civil rights suit against him as required under the insurance policies. Carmouche and Auster appeal. Aetna appeals the district court's denial of its motion for summary judgment on the issue of coverage.

## II. Dismissal of Carmouche's and Auster's Claims

Carmouche and Auster offer two arguments urging that the summary judgment in favor of Aetna was in error: (A) a genuine issue of fact exists as to whether Aetna's alleged failure to deliver the policies, or alternatively Carmouche's lack of knowledge of the policies, excused his delay in giving Aetna notice; and (B) Aetna is required by law to demonstrate prejudice from the delayed notice to avoid liability under the policies.

### A. Delivery of the Insurance Policies

Summary judgment is proper when the pleadings and other evidence before the court show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celo-*

---

1. Carmouche was not originally named in the suit. On remand, Auster amended its complaint to name Carmouche and another. The amendment also cured certain pleading defects.

2. The district court had improperly instructed the jury that it could award actual damages for the intrinsic value of the deprivation of a constitutional right. We found the award unsup-

ported by the evidence due to the difficulty in ascertaining from the general verdict the extent to which the jury impermissibly compensated Auster. *See Auster II,* at 603.

We also found the award of $5,000,000 punitive damages so excessive as to indicate inherent passion and prejudice, which necessitates a new trial. *Id.*

*tex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Carmouche and Auster contend that they raised a genuine fact issue as to whether Aetna failed to deliver the subject insurance policies to the Stream estate and/or Carmouche as required by Louisiana law. The critical statute provides that "every policy shall be delivered to the insured or to the person entitled thereto ...". L.S.A. R.S. 22:634(A). Appellants argue that Aetna's alleged failure to deliver the policies excused Carmouche from complying with the notice requirements in the policies.

■ On the record we must conclude that appellants fail to show that any substantial factual issue exists as to the delivery of one of the policies. Louisiana case law establishes that delivery of an insurance policy may be actual or constructive. *Fenasci v. Travelers Ins. Co.*, 642 F.2d 986 (5th Cir.1981); *Pruitt v. Great Southern Life Ins. Co.*, 202 La. 527, 12 So.2d 261, 262 (1942). Whether delivery has occurred depends upon the intention of the parties as manifested by their acts or words. *Pruitt*, 12 So.2d at 262. *See also Mistich v. United Benefit Life Insurance Co.*, 199 So.2d 14, 16 (La.App.1967).

■ The evidence before the court incontrovertibly establishes that Aetna "delivered" the policy[3] to "the person entitled thereto", the Stream estate. Although it is disputed whether the Stream estate or its agent, office manager Mariella Welch, *actually* received the liability policy,[4] the evidence nonetheless shows conclusively that Aetna constructively delivered the policy.

The Stream estate's insurance processor, Mrs. Gammage from Southpoint Insurance Agency, testified that she received the policy from Aetna on January 17, 1983, along with Aetna's invoice to the agent. She prepared Southpoint's invoice to the Streams the next day along with a trans-mittal letter for the policy dated January 19, 1983. This letter was found in the Stream estate's insurance file. In the same file were the policies for the previous year (1982) and the years subsequent (1984 and 1985) to the policy year at issue. Stapled to the letter was an invoice from the Agency reflecting the premiums due by the Stream estate for various policies delivered with the cover letter, including the liability policy in question.

The letter stated in part: "We are presently reviewing the schedule of properties under the Comprehensive General Liability policy to conform to the list of properties prepared by your office. In the meantime, we are forwarding the renewal as prepared, and any subsequent changes necessary can be handled separately." Appellants point to this language and the absence of the subject policy from the files as evidence that the policy never was delivered.

This language, however, together with the presence in the Streams' files of the virtually identical policies for the year prior and subsequent to the subject policy, leads to the opposite conclusion. It shows indisputably the agent's (and Aetna's) intention to complete the renewal of the insurance contract and constructively "deliver" the subject policy. If they did not send the actual policy, they only retained it to update the list of properties covered, as stated in the letter. Appellants offer no evidence to the contrary.

■ Furthermore, as recognized by the court in *Ryan v. Security Indus. Ins. Co.*, 386 So.2d 939 (La.App.1980), the delivery of an insurance policy by the insurance company to an agent can amount to constructive delivery in satisfaction of the statute. *Id.* at 942. In that case, it was the insurance company's policy to give the insured's copy of the policy, after issuance, to the

---

**3.** Throughout the entire record on appeal, all the parties and the district judge refer interchangeably to "the policy" and "the policies." The reason for this is unclear, but it appears that the only policy whose delivery is in dispute is the general liability policy.

**4.** Welch testified that she could not locate the policy in question. As a rule, she would place any renewals, additions, or originals received in the file. If she happened to see both an old and a current policy in the file, she would throw out the old one. These activities occurred on an irregular basis.

agent for delivery to the insured. The agent failed to deliver to the plaintiff-insured. The court nonetheless found constructive delivery since no restrictions or conditions were placed on the agent concerning delivery of the policy after its issuance.[5]

When Aetna issued the subject insurance policy, it is uncontroverted that it sent the Streams' copy, as well as the agent's copy, to the agent at the Southpoint Insurance Agency for delivery to the Stream estate. Absent evidence of restriction or conditions on the delivery of the policy, delivery occurred under Louisiana law even if the Southpoint Agency failed to send the actual policy to the Stream estate. Thus, appellants do not raise any genuine issue of fact on the issue of delivery.

■ Appellants alternatively argue that, even if the policies were delivered to the Stream estate, Louisiana law requires that they also had to have been delivered to Carmouche as an insured. But, we agree with the district court that Aetna complied with the requirements of L.S.A. R.S. 22:634. Section 634 states that "every policy shall be delivered to the insured *or* to the person entitled thereto." (Emphasis added.) The statute does not require delivery to the insured *and* the person entitled. Aetna delivered the policy to the "person entitled", the Stream estate, which purchased the policy and paid the premiums. This delivery was sufficient to meet the requirement of the statute.

Appellants not only fail to raise a genuine issue, but they also mistakenly assume that the issue of delivery is material to their case for liability. They present no relevant law holding that the failure to deliver the policies has the effect of excusing the notice requirement in the insurance policies. Instead, they only offer a statement that "Aetna has admitted that deliv-

ery of the subject policies was a prerequisite to any effort to enforce [the] notice provisions...." In fact, Aetna has not made any such admission, nor would it bind us if it had.[6]

■ Appellants strongly urge that, even if Aetna satisfied the statutory requirement of delivery, Carmouche's delay in giving Aetna notice is excused nonetheless because of his own lack of notice of the policies' existence. They cite cases holding that a beneficiary who fails to give timely notice may still assert a claim under a life insurance policy if the plaintiff was duly diligent and the failure to know of the policy was not his fault. *See Suire v. Combined Insurance Company*, 290 So.2d 271 (La.1974); *Konrad v. Union Casualty & Surety Co. of St. Louis, Mo.*, 49 La.Ann. 636, 21 So. 721 (1897).

We agree with the district court that this contention must fail. Assuming these cases apply, Carmouche fails to raise a substantial factual possibility that he did not have at least constructive notice, or that any lack of notice was not his own fault. He was the attorney for the Stream estate during the relevant period. He was centrally involved in this entire action from the beginning. It is incredible that he would not know of these policies, and, as an attorney, of their notice requirements. At a minimum, a duly diligent attorney would have investigated his client's insurance portfolio at the outset of this case. Appellants offer no substantive evidence to explain Carmouche's alleged failure to know of his client's insurance policies. "Mere speculation or conjecture" cannot raise a genuine fact issue. His asserted abject failure to know of the policies can be attributed only to his own fault.

For all the above reasons, we find that appellants fail to show that there is a genuine issue of material fact raising doubt as

---

5. A delivery would not be effected, however, by a transmission of the policy to the agent if the agent received instructions to turn over the policy only if certain conditions, such as that the applicant be in good health, were met. *See, e.g., Mistich v. United Benefit Life Insurance Co.*, 199 So.2d 14, 16 (La.App.1967).

6. Indeed, a failure to deliver usually evidences that an insurance contract was never intended in the first place. *See e.g., Mistich, supra*, at 16–17. If no contract had been formed at all, Aetna would not be liable. As we conclude above, however, Aetna did meet the delivery requirements of Louisiana law in this case.

to delivery or notice to Carmouche. We therefore affirm the decision of the district court granting summary judgment finding Carmouche was not excused for his failure to give notice of the suit to Aetna.

### B. Prejudice as an Element of Lack of Notice Defense

We now reach the issue of whether the claims of Carmouche and Auster can be defeated by failure to notify Aetna when suit was filed. Both Carmouche and Auster contend that the district court erred in holding that Aetna was not liable because of lack of notice even if no prejudice to it occurred. Applying the rule recently declared by this Court in *MGIC Indemnity Corporation v. Central Bank*, 838 F.2d 1382 (5th Cir.1988), the district court held that the express condition precedent language of the notice provisions eliminated any opportunity for appellants to overcome the lack of notice by failure of Aetna to show prejudice.[7] We agree that the district court correctly relied on *MGIC* in summarily dismissing Carmouche's claims of coverage because of his failure to notify Aetna even without requiring Aetna to establish prejudice. But we find that the correct rule in the case of Auster's claims is that they are valid against Aetna even in the absence of notice unless Aetna proves sufficient prejudice to defeat the claims.

**7.** Section 4(b) of the "Conditions" section of the Aetna liability policy requires:

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Section 5, "Action against Company", provides: No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. . . .

Section 6.6 of the "Conditions" section of the umbrella policy also requires as a condition precedent that the insured fully comply with all the terms of the policy including the notice provision.

**8.** In *MGIC* we distinguished other lack of notice cases in which Louisiana courts had required the insurer to show prejudice. First, the policies in those cases did not contain express lan-

### 1. *Carmouche*

This Court's opinion in *MGIC* provides the controlling law for Carmouche's claims. The relevant facts of *MGIC* are directly in point. In that case, the insurer MGIC sought a declaratory judgment denying its liability under the policy for the losses claimed by its insured. The liability policy contained a provision making prompt notice of claims to the insurance company a condition precedent to the insured's rights under the policy. The insured failed to give timely notice as required. This Court held, under Louisiana law, that if the insured failed to comply with the express condition precedent of timely notice, then the claims were not covered under the policy "regardless of whether MGIC can demonstrate prejudice." *MGIC*, at 1385–86.[8]

Similarly, the liability and umbrella policies in this case contain provisions requiring timely notice as an express condition precedent to coverage under the policies. Carmouche without adequate excuse failed to give timely notice. Under the rule of *MGIC*, the claims of Carmouche based on the policies are not covered regardless of prejudice from the lack of notice to Aetna.[9] Therefore, summary judgment dismissing Carmouche's claims against Aetna was proper.

### 2. *Auster*

Auster's claims, however, present a different question. The district court, al-

guage that the notice requirements were a condition precedent to coverage. Second, we pointed out that equity played a large role because the insureds in those cases were unsophisticated individual consumers. In *MGIC*, the insured was a sophisticated business entity, presumed to be conversant in the terms of its insurance contract. *MGIC*, 838 F.2d at 1387. Likewise, the insured in this case, Carmouche, is an attorney who also is expected to know the terms of his client's insurance policy making him the beneficiary.

**9.** Carmouche attempts to argue that *MGIC* nonetheless should be distinguished from the present case because *MGIC* addressed a "claims made" policy, and not an "occurrence" policy. This distinction is immaterial. First, *MGIC* relies on Louisiana cases that do address occurrence type policies. Second, appellant offers no persuasive reasoning or rationale to treat the two types of policies differently.

though obviously reluctant and uncomfortable in doing so, felt that it was bound by *MGIC* in holding against Auster's direct action claims. It considered itself bound because the *MGIC* court relied upon a direct action case, *Hallman v. Marquette Company,* 149 So.2d 131 (La.App.1963), in concluding that the insurer was not required to demonstrate prejudice to escape liability.

We find that the district court erred in its application of *MGIC.* The court in *MGIC* only addressed the rights of the insured against the insurer under the policy. Despite its reliance on a direct action case, the court did not consider the rights of an injured third party arising under the Louisiana Direct Action statute, L.S.A. R.S. 22:655. We therefore cannot rely properly on *MGIC* to provide the appropriate rule. We must look to Louisiana law directly to determine whether Aetna must show prejudice as part of its lack of notice defense to Auster's claims under the Louisiana Direct Action statute.

Based on our examination of the jurisprudence in Louisiana on this issue, we fully understand the district court's discomfort. Directly contrary to *Hallman* is the later case of *Pomares v. Kansas City Southern Ry. Co.,* 474 So.2d 976 (La.App. 1985). We analyze the Louisiana statutory law and the cases to recognize that *Pomares v. Kansas City Southern Ry. Co.,* supra, correctly relies upon the Louisiana Supreme Court's opinion in *West v. Monroe Bakery,* 217 La. 189, 46 So.2d 122 (1950), in establishing the law applicable to the present case.

*Pomares* is the most recent Louisiana case addressing the issue of prejudice as an element of a delayed notice of suit defense in a direct action suit. In *Pomares,* a

judgment creditor sought from the insurer the satisfaction of a judgment obtained against the insured. The insurer asserted that it was not liable because it did not receive notice of the suit until the plaintiff attempted to execute the judgment by garnishment against the insurance policy. The policy contained notice of suit as an express condition precedent to the insurer's liability under the policy.

The Louisiana court held that the insurer could not, without a showing of prejudice, use the failure of the insured to give proper notice of suit to defeat a valid claim by the third party. It then upheld liability because the insurer failed to prove any prejudice resulting from the lack of notice.[10] In support of its ruling, the court relied upon *West v. Monroe Bakery, supra,* as well as several Louisiana Court of Appeals opinions.[11] It did not address the contrary holding of *Hallman.*

We find that *Pomares* properly follows *West,* the leading Louisiana Supreme Court case on the issue of delayed notice. In *West,* the court addressed the question whether an insurer could escape liability to a third party under the Louisiana Direct Action statute because of the insured's failure to give notice of the accident as required as an express condition precedent in the policy. The court held that an injured third party who is not at fault does not lose his cause of action due to the insured's breach of the notice provisions in the policy.[12] The court rested its decision on previous case law and on a comprehensive analysis of the legislative intent behind the Direct Action statute.

The court recognized that the statute has been treated consistently as conferring substantive rights on third parties to contracts of public liability insurance, which

**10.** Noteworthy is the court's focus on the fact that the insured was represented by counsel at trial as evidence negating the existence of prejudice. *Pomares, supra,* at 978.

**11.** *Chennault v. Dupree,* 398 So.2d 169 (La.App. 1981); *Fakouri v. Insurance Co. of North America,* 378 So.2d 1083 (La.App.1979); *O'Neal v. Southern Farm Bureau Insurance Co.,* 325 So.2d 887 (La.App.1976); *Miller v. Marcantel,* 221 So.2d 557 (La.App.1969).

**12.** We note that this is essentially the same question we faced regarding notice to Carmouche, discussed above. Here, however, it is clear that Auster, unlike Carmouche, is in no way at fault for Carmouche's failure to give notice nor its own lack of notice of the existence of the policy.

rights become vested at the moment of the accident in which they are injured subject only to such defenses as the tortfeasor himself may legally interpose. *See West,* 46 So.2d at 123. Because these rights vest at the time of injury, the subsequent dilatory failure of the insured to comply with the notice provisions cannot defeat the third party's rights under the statute. *Id.*

Perhaps most significantly, the Louisiana Supreme Court in *West* rejected the insurer's central argument in that case, one apparently considered persuasive by the *Hallman* court. The insurer argued that the statute, by providing *inter alia* that direct actions "shall be within the terms and limits of the policy", restricted the recovery of the third party to all of the terms of the policy applicable to the insured. The court, however, found that the statute refers only to the amount recoverable and to those terms and conditions with which the injured third party had the power to comply. It did not intend to include the notice requirements, which are outside of the injured third party's control. *See West, supra* 46 So.2d at 126 (quoting with emphasis *Edwards v. Fidelity & Casualty Co.,* 11 La.App. 176, 123 So. 162 (1929)).

This rationale, said *West,* is best illustrated by the invalidity of a policy provision that prohibits a third party action against the insurer. If the court were to give effect to such a policy provision, it would frustrate the entire purpose of the Direct Action statute. So, the court concluded:

> it would seem unreasonable to interpret [the Louisiana Direct Action statute] to mean that the injured person has an independent, direct action against the insurance company, but that this action can be defeated by the failure of an immediate notice by the insured, where the injured person has no way whatever to see that such notice is given; and particularly where the policy provides only for the giving notice by the insured, not by the injured party. Such is apparently not the intention of the lawmakers.

*West, supra,* 46 So.2d at 125 (quoting the dissenting opinion in *Duncan v. Pedarre,* 164 So. 498 (La.App.1935)).

This reasoning, of course, seemingly results in a quandary. How can the third party recover from the insurer, while the insured himself cannot due to his failure to comply with an express condition of the policy? The answer is in the context and purpose of the Direct Action statute.

First, as the Louisiana Supreme Court recognized, an innocent injured third party, unlike the insured, does not contract to give notice. He does not have a contractual relationship with the insurer at all. Rather, his rights arise out of a completely different source, the direct action statute. *See id.* at 126 and 128 (quoting *Edwards v. Fidelity & Casualty Co.,* 11 La.App. 176, 123 So. 162 (1929) and Judge Kennon's district court opinion in *West,* respectively). Thus, the policy terms do not control the scope and nature of the injured third party's rights. The third party's rights under the statute vest at the time of injury, whereas the rights of the insured remain subject to conditions in the policy that arise subsequent to the injury, such as the requirement of notice.

Second, this difference in treatment also comports with the basic legislative purpose behind the Direct Action statute, which was summarized by the Louisiana Supreme Court in *Davies v. Consolidated Underwriters,* 199 La. 459, 6 So.2d 351 (1942). "The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." *West, supra,* 46 So.2d at 130 (quoting *Davies, supra,* 6 So.2d at 357). By allowing Auster, an innocent member of the public, to assert its Direct Action claim against Aetna despite the delay in notice, the legislature has chosen to put the onus on the insurer to recover from the tortfeasor-insured, rather than on the innocent and injured third party.

We conclude that Auster can claim against Aetna regardless of the notice requirements of the policies. There remains the issue of whether Aetna can avoid liability by proving it was prejudiced by the lack of notice.

The *West* court did not address this issue, but it did by implication recognize that if the insurer showed prejudice to an adequate level, it could escape liability. *West* suggests that the insurer did not suffer prejudice from the insured's failure to meet the notice requirement. The court stated that the injured third party should not be divested of his direct action "except in a very clear case." In *Pomares* the court fully recognized that liability of the insurer could be avoided by proof of prejudice. We conclude that under Louisiana law as presented in both *Pomares* and *West*, the insurer can defend successfully against the third party only if it can demonstrate prejudice from the insured's failure to comply with the policies' notice provisions.

Aetna attempts to persuade us that *West* is limited to cases in which the insured failed to give notice of an event—an *"accident"*, and that it logically does not and cannot apply to a case of delayed notice of a subsequent *"suit"*. While we agree that this factual "suit" versus "accident" distinction can have substantial significance in determining whether an insurer in fact suffered prejudice, we are unpersuaded that this difference renders the reasoning and explanation in *West* inapplicable to this case. *West* contains absolutely no indication that the court intended to limit itself to notice of accident cases. The broad language in *West* focuses instead on the general purpose behind the Direct Action statute, to protect the public, and the relative positions of the parties involved. Indeed, the *West* opinion rests its holding on its conclusion that the injured third party's rights under the Direct Action statute vest at the time of the injury. All notice requirements are conditions subsequent to the time of injury. Under *West*, the notice requirements cannot divest the third party of its rights against the insurer. We find nothing in Louisiana law leading to a conclusion that notice of accident is to be treated differently from notice of suit on the issue of whether the insurer must demonstrate prejudice resulting from the insured's failure to give notice. *Cf. MGIC*, at 1386; *Miller v. Marcantel*, 221 So.2d 557 (La.App.1969); *but see Hallman*, at 135. We must reject the distinction urged by Aetna that notice of accident as opposed to suit creates a difference in whether a showing of prejudice is required.

■ We inquire, then, whether Aetna has shown prejudice to the point of the certainty required by summary judgment. It is undisputed that Aetna did not have the opportunity to participate in the liability portion of the trial in this case. As footnoted in the *MGIC* opinion, denial of the opportunity to litigate is obviously prejudicial to some extent and in certain cases may constitute prejudice as a matter of law. *See MGIC, supra*, at 1386 n. 2.

Auster and Carmouche, however, offer record evidence raising doubt that Aetna was prejudiced. An Aetna representative testified at deposition that Aetna would have denied coverage and would not have defended Carmouche even if it had been timely notified. The damages portion of this case has yet to be tried on remand. Furthermore, Carmouche was represented fully and effectively at trial. Finally, the delay in notice did not cause Aetna to forfeit any other defenses it might assert against Auster. These unchallenged facts, taken together, raise a genuine factual issue as to whether Aetna suffered prejudice from the delay in notice. *See Fakouri v. Insurance Co. of North America*, 378 So.2d 1083 (La.App.1979).

Summary judgment in favor of Aetna against Auster therefore was improper. We must reverse the district court's summary judgment dismissing Auster's claim against Aetna and remand for trial on the issue of prejudice.

### III. *Policy Coverage of Auster's 1983 Claims*

Aetna challenges the district court's denial of its motion for summary judgment on the issue of coverage of Auster's constitutional claims asserted under § 1983.[13]

---

**13.** Of course, this issue becomes relevant only if, on remand, Aetna fails to show prejudice

from the delayed notice.

Aetna argues that no special provisions in the policies cover violation of constitutional rights. Rather, the policies only cover tort-based bodily injury or property damage.[14] Alternatively, it contends that any deprivation of constitutional rights Auster sustained did not constitute an "occurrence" within the terms of the policy.

These assertions are without merit. Aetna's first contention, that the policies contain no special provisions and therefore do not cover Auster's claims, flies in the face of relevant Louisiana law. As the district court correctly recognized, an insurer must clearly express any exclusions from liability. Any doubt or ambiguity is resolved against the insurer, against forfeiture, and in favor of what reason and probability dictate was intended by the parties with respect to coverage. *Benton Casing Service, Inc. v. Avemco Insurance Company*, 379 So.2d 225, 232 (La.1979).

The subject policies do not expressly exclude claims for damages based on constitutional deprivations. The policies provide clearly for "all sums" for which the insured is liable as damages because of injury to property. Strictly construed, the policies cover the property damage that resulted from the illegal placement of the microdots in the Auster oilfield equipment.

Aetna's second contention is equally unpersuasive. Aetna argues that the damages Auster sustained were not "caused by an occurrence" within the requirement of the subject policies. The policies define occurrence as "... an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Aetna offers two specific arguments on this issue. First, it argues that the occurrence clause does not encompass any intentional acts, regardless of whether the results of those act were "expected or intended." The established law, however, is clear that such occurrence clauses do cover intentional acts when the *results* of the acts are unintended and unexpected. *See Schexnider v. McGuill and Lafayette Insurance Co.*, 526 So.2d 513 (La.App. 1988); *Hebert v. Burton*, 432 So.2d 1109 (La.App.1983); *Rambin v. Wood*, 355 So.2d 561, 562–64 (La.App.1978); *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir.1988).

Aetna offers no evidence that the subject clause differs or varies in any way from those considered in the above cases. In fact, the Seventh Circuit in *Argento* analyzed an occurrence clause identical to the provision in this case in reaching its conclusion. As the *Argento* court recognized, an occurrence clause must be distinguished from an "intentional acts" exclusion. Such an exclusion must in terms except any damage caused by an intentional act. An occurrence clause, on the other hand, only excepts from coverage damage that the insured "expected or intended." *See Argento, supra* at 1497–99. The subject policies do not contain any "intentional act" exclusions. The occurrence clause cannot substitute and act as a blanket exclusion for all intentional acts.

Aetna's second argument is a narrower one. It urges that the damage resulting from Carmouche's acts. actually was expected and intended, thus relieving Aetna from liability. Yet Aetna offers no evidence in the record to show that Carmouche intended to cause the property damage that ensued from his participation in the insertion of the microdots.[15] Rather, Aetna bases this contention solely on the fact that Carmouche acted intentionally in the first place. The district court properly concluded, "although Carmouche intended

---

**14.** The Aetna liability policy provides in relevant part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

**15.** Intention to cause damage by inserting the microdots was an issue never presented to the jury, because claims under § 1983 do not require a finding of intent. A plaintiff need only show reckless indifference.

to place the microdots in the well, a reasonable person could find that property damage to Auster's well was not a foreseen natural and probable result of Carmouche's intentional conduct." Thus, a genuine issue of material fact regarding Carmouche's intentions exists, and neither party is entitled to summary judgment.

We affirm the district court's denial of Aetna's motion for summary judgment against Auster on the issue of coverage. If, on remand, Aetna does not prove prejudice as a result of the delay in receiving notice, then the district court must determine whether Carmouche intended or expected his actions to result in damage to Auster's equipment.

Aetna also challenges the district court's ruling on the issue of the policies' coverage of punitive damages. We need not reach this issue. On prior appeal, we remanded this case for further proceedings on the issue of damages. Unless and until punitive damages are awarded, that issue is not ripe for consideration upon appeal.

## IV. Conclusion

In summary: (1) We affirm the district court's summary judgment in favor of Aetna against both Carmouche and Auster on the issue of delivery/notice of the policies to Carmouche. (2) We also affirm the district court's summary judgment in favor of Aetna against Carmouche, dismissing Carmouche's claims against Aetna. (3) We reverse, however, the summary judgment in favor of Aetna as to Auster's direct action claims against Aetna. We hold that Aetna is liable to Auster despite the lack of notice to Aetna, unless upon trial Aetna proves prejudice. (4) Finally, we affirm the district court's denial of Aetna's motion for summary judgment on the issue of coverage because Auster raises a factual issue

as to whether Carmouche intended to damage Auster's oilfield equipment.

**AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.**

GARWOOD, Circuit Judge, specially concurring:

I join in Judge Williams' careful opinion, and append this additional writing only to note my understanding that we do not reach the issue of whether Aetna is bound by Auster's liability judgment against Carmouche for purposes of Auster's "direct action" against Aetna on its liability policy issued to the Stream estate. That issue may, indeed, never be reached in the event that on remand Aetna establishes that it was prejudiced by the lack of notice of Auster's suit, for in that event the failure to meet the policy's conditions precedent would be effective to defeat coverage. If, however, Aetna fails to establish prejudice, the question will arise whether Auster, in its "direct action" against Aetna, must prove Carmouche's liability, or whether Aetna is "bound" by the judgment against Carmouche rendered when Aetna was not a party to the suit and had no notice of it. So far as I am aware, the Louisiana Supreme Court has never passed on this issue in a case where, as here, there was no notice of suit as required by the policy, and the insured for that reason was not covered.[1]

For one to be bound by a judgment in a suit to which it was not a party and of which it had no notice is, to say the least, unusual, if not unconstitutional. That such a party is unable to establish that it could have had a good defense to the suit is normally irrelevant. *See, e.g., Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 899–900, 99 L.Ed.2d 75 (1988). Certainly nothing in Aetna's policy can reasonably be construed as a waiver of

**1.** The result in *Pomares v. Kansas City S. Ry. Co.,* 474 So.2d 976 (La.Ct.App.1985), holds the insurer bound by the judgment against the insured, but treats the question simply as one of whether the policy *coverage* was forfeited (as to the injured party) by the insured's failure to serve notice of the suit. *Pomares* appears to be in conflict with *Hallman v. Marquette Casualty*

*Co.,* 149 So.2d 131 (La.Ct.App.1963), which held that coverage was forfeited. In *Miller v. Marcantel,* 221 So.2d 557 (La.Ct.App.1969) (Tate, J.), the issue was simply coverage, and the insurer was apparently brought into the case well before trial, and was merely contending that the lack of earlier notice of the suit relieved it of all policy obligations.

such notice; to the contrary, the policy expressly insists on it.

Nor is it clear that the Louisiana Direct Action Statute, La.Rev.Stat. 22:655, or the public policy behind it, provide an answer to this question. The first sentence of the Direct Action Statute [2] does authorize an action by the injured party against the insurer based on an executory "judgment against the insured for which the insurer is liable." However, this sentence is not the "direct action" part of the statute, and appears to have been directed at abrogating the "payment" rule once judgment has been obtained against the insured. *Cf. Seguros Tepeyac, S.A. Compania Mexicana v. Bostrom*, 347 F.2d 168 (5th Cir.1965) (payment rule). Under a proper construction, the sentence appears to be limited to instances where "the insurer is liable" to the insured, a situation that we have held is not present here. The next sentence *does* grant "[t]he injured party ... a right of direct action against the insurer." And, it provides that "such action may be brought against the insurer alone, or against both the insured and the insurer jointly." The latter language suggests that the insurer's liability to the injured party in a direct action suit—as distinguished from the liability to the injured party that the insurer has only by reason of its liability to the insured—is to be determined *only* in a suit to which the insurer is a party.

In *West v. Monroe Bakery*, 217 La. 189, 46 So.2d 122 (1950), as Judge Williams' opinion correctly notes, the Louisiana Supreme Court's holding, that the insured's failure to give the insurer notice of the accident did not vitiate the injured party's right of direct action against the insurer, "rests ... on ... [the] conclusion that the injured third party's rights under the Direct Action Statute vest at the time of injury." If such rights vest at the time of injury, they cannot be *enhanced* by *subsequent* proceedings of which the insurer has no notice and to which it is not a party. In this connection, it is to be noted that *West* quoted at length with approval from *Davies v. Consolidated Underwriters*, 199 La. 459, 6 So.2d 351, 357 (1942), including the following passage:

> " 'By maintaining plaintiff's action, the defendant [insurance] company is not deprived of any substantial right. *Its liability remains contingent and is dependent upon proof of the negligence of* Stahl, *the* [insured] *driver of the automobile.' " West*, 46 So.2d at 130 (emphasis supplied by *West*).

As Judge Williams observes, "[t]he third party's rights under the statute vest at the time of injury, whereas the rights of the insured remain subject to conditions in the policy that arise subsequent to the injury, such as the requirement of notice." Thus, where, as here, those conditions defeat coverage for the insured, they would likewise appear to prevent the injured party from merely using its judgment against the insured to establish the liability of the insurer; on the other hand, *policy coverage* for the benefit of the injured party is *not* defeated (unless prejudice to the insurer from the insured's policy breach is established), so that the injured party remains free to proceed with a "direct action" against the insurer, in which, however, it would appear to have to *prove* its cause of action. Ordinarily an issue such as this would be appropriate for certification to the Louisiana Supreme Court. However, it may not prove to be material here, for if Aetna is able to establish prejudice from the lack of notice, coverage will be defeated in any event. Nevertheless, we should not foreclose the issue at this stage.

