**C. Ritchie BRUMFIELD as Trustee of the Sun Belt Employee Stock Bonus Trust**

v.

**Wendell P. SHELTON, et al.**

**Civ. A. No. 87–4180.**

United States District Court, E.D. Louisiana.

Sept. 14, 1993.

Julie E. Schwartz, Richard E. Anderson, and Cheryl V. Cunningham, Liskow & Lewis, New Orleans, LA, for plaintiff.

J. Michael Johnson, Galloway, Johnson, Tompkins & Burr, New Orleans, LA, and Edward E. Nicholas, III, and Laura G. Fox, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, for defendants, American Cas. Co. of Reading, Pa.

### ORDER AND REASONS

MENTZ, District Judge.

Defendant American Casualty Company of Reading, Pennsylvania ("American Casualty") asks the court to reconsider its denial of summary judgment grounds of untimely notice and asks the court to grant summary judgment because notice was inadequate. Having considered the record, the memoranda, and the applicable law, the court grants the motions for the reasons that follow.

### I. BACKGROUND

Sun Belt Federal Bank F.S.B. ("Sun Belt") established an Employee Stock Ownership Plan ("ESOP")[1] in 1983. On September 4, 1984, the ESOP bought 17,704 shares of Sun Belt stock for $45 per share, a price that plaintiff alleges was more than adequate consideration. Plaintiff[2] ("Trustee") alleges that the ESOP's administrative committee members breached their fiduciary duties by failing to conduct a prudent investigation of

---

1. The ESOP, an employee benefit plan designed to invest primarily in securities issued by its sponsoring company, was established under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

2. Plaintiff is C. Ritchie Brumfield, a Special Representative of the Federal Savings and Loan Insurance Corporations ("FSLIC") that is oversee-

ing the liquidation of the ESOP Trust and Plan. The Federal Home Loan Bank Board placed Sun Belt in receivership in 1986 on grounds of insolvency and substantial dissipation of assets and appointed the FSLIC as receiver. As receiver, FSLIC assumed the assets and liabilities of Sun Belt.

the stock's fair market value and are liable for consequent losses.

Plaintiff sues the ESOP's former trustee and administrative committee members and American Casualty as the issuer of the ESOP's fiduciary liability insurance policy. American Casualty denies coverage on grounds that it did not receive timely or adequate notice. American Casualty asks the court, first, to reconsider its July 19, 1989,[3] denial of summary judgment on grounds that it received no notice and, second, to grant summary judgment on grounds that it received inadequate notice.

## II. LAW AND DECISION

### A. Reconsideration

■ The motion for reconsideration is deemed a motion for relief from judgment because it was filed more than ten days after the court's denial of summary judgment.[4] Fed.R.Civ.P. 60(b) (1991 Rev. Ed.); *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991). Plaintiff does not oppose reconsideration and, thus, the court reconsiders the merits of the summary judgment motion.

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a moving party satisfies the requisites of Rule 56(c), a motion for summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The inferences drawn from the underlying

facts, however, must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the court notes that the substantive law determines materiality of facts, and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court now turns to the merits of the arguments with these standards in mind.

### C. Discussion

■ The interpretation of an insurance policy is a question of law. *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 135 (5th Cir.1990). An insurance policy is a contract and, thus, constitutes the law between the parties. When the policy wording at issue is clear and expresses the parties' intent, the agreement must be enforced as written. *FDIC v. Barham*, 995 F.2d 600, 603 (5th Cir.1993) (citing *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La.1988)). *See R.T.C. v. Miramon*, 1993 WL 292833 at *5 (E.D.La.1993) (Schwartz, J.); *Bank of Louisiana v. Mmahat, Duffy, Opotowsky & Walker*, 608 So.2d 218, 220–21 (La.App. 5th Cir.1992). The court has no authority to alter its terms under the guise of contractual interpretation when insurance policy provisions are stated in unambiguous language. *Barham*, 995 F.2d at 603 (citing *Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 953 (5th Cir.1991)).

The insurance policy at issue is a "claims made" policy specifically designed to limit coverage to claims made during the policy period.[5] The policy contains the following relevant provisions:

---

3. Doc. 101.

4. The court denied summary judgment on July 19, 1989, and American Casualty moved for reconsideration on December 5, 1989. The court stayed this case on December 11, 1989, (Doc. 144) and lifted the stay on March 31, 1993. Thus, the court now takes up the motion for consideration that was filed prior to the stay.

5. The policy, in effect from September 20, 1984, to December 31, 1985, 12:01 a.m. standard time, states: Professional liability insurance provided hereunder is written on a claims-made basis and only applies to claims first made while this insurance is in force. No coverage exists for claims first made after the end of the policy period unless and to the extent discovery period applies. Ex. A, at 2, American Casualty's Mem. for Recons. and Summ. J.

SECTION 3: COVERAGE CLAUSE

This Policy shall cover any Loss incurred prior to the termination of this Policy arising from any claim made (a) within the Policy Period or (b) within the Extension Period provided for in General Condition 5(B) if the right is exercised by the Insured. Any claim made subsequent to the Policy Period and on which notice was given to the Insurer within the Policy Period shall be treated as a claim made during the Policy Period.

SECTION 5: GENERAL CONDITIONS—(E) NOTICE OF CLAIMS

(1) If, during the Policy Period, the Insureds shall (a) receive written or oral notice from any party that it is the intention of such party to hold the Insureds, or any of them, responsible for a Breach of Fiduciary Duty; or (b) become aware of any occurrence which may subsequently give rise to a claim being made against the Insureds, or any of them, for a Breach of Fiduciary Duty; and shall, during such period give written notice thereof to the Insurer as soon as practicable and prior to the date or termination of the Policy, then any claim which may subsequently be made against the Insured arising out of such Breach of Fiduciary Duty shall, for the purpose of this Policy, be treated as a claim made during the Policy Year in which such notice was given.[6]

### 1. Timely Notice

According to the policy terms, Sun Belt was required to give notice within the policy period of any occurrence that could be the subject of a claim after the policy's expira-

tion. The court finds as a matter of law that the ESOP policy terms set out above are unambiguous.[7] *See Barham*, 995 F.2d at 603.

### a. Absence of Notice

■ Plaintiff argues that the trier of fact must consider four letters[8] in deciding whether notice was timely. The court disagrees and finds that no trier of fact could conclude that any of the letters constituted timely notice. The first letter was delivered within the policy period on December 13, 1985, but purported to give notice under Sun Belt's Directors' and Officers' liability policy ("D & O policy"), a policy separate from the ESOP policy.[9] Thus, the timely notice issue is moot because notice under the D & O policy cannot serve as notice for the ESOP policy no matter when notice was given. The second and third letters, dated December 30, 1985, also purport to give notice under different policies.[10] Likewise, they cannot serve as notice under the ESOP policy regardless of their timeliness. The fourth letter, dated December 30, 1985, attempted to give notice under the ESOP policy[11] but was sent by Sun Belt to Continental via Federal Express ZapMail at 8:25 a.m. on December 31, 1985, a little more than eight hours after the policy expired.[12]

### b. Absence of Prejudice Requirement

■ Even if the letters fail to meet the policy notice requirements, American Casualty's defense should be rejected because it cannot demonstrate prejudice, plaintiff argues. Plaintiff argues that the prejudice rule, which provides that injured third-party

---

6. Ex. A; American Casualty's Mem. for Recons. and Summ. J.

7. Plaintiff contends that one premium invoice and two renewal notices led him to believe that the policy provided coverage through December 31, 1985. The court finds the actual policy and its declaration page, and not subsequent documents, controlling on this issue.

8. Each of the four letters is addressed to Continental Casualty Company ("Continental"). Defendant American Casualty is a wholly-owned subsidiary of Continental.

9. The policy identified in the December 13 letter is policy number 03145DA02. Ex. C, American Casualty's Mem. for Recons. and Summ. J.

10. They purport to give notice under D & O policy number 03145DA02 and IRA and Keogh Errors and Omissions Policy number 03145KE01. Exs. E and F, American Casualty's Mem. for Recons. and Summ. J.

11. Fiduciary Liability Policy ESOP and Bonus Plan, policy number 03145PLO1; Ex. D, American Casualty's Mem. for Recons. and Summ. J.

12. Federal Express billing record; Ex. G, American Casualty's Mem. for Recons. and Summ. J.

plaintiffs are exempt from the policy's notification requirements, applies in claims made policies as it does in occurrence policies. Plaintiff erroneously relies on *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570 (5th Cir. 1990), for this proposition. However, plaintiff is not a third party as envisioned by *Auster Oil.* He is the trustee and receiver of Sun Belt's ESOP whose rights are solely derived from the policy because he took the place of the one originally insured. *See Miramon*, 1993 WL 292833 at *3–4. The application of the prejudice rule here would negate the purpose of the claims made policy by creating insurance coverage for which the parties did not contract. *See R.T.C. v. Miramon*, 1993 WL 302662 at *4 (E.D.La.1993).[13] Such would not only be inequitable but contrary to law. *Barham*, 995 F.2d at 604–05.

## 2. Adequate Notice

■ Plaintiff makes three arguments for adequate notice, each of which the court finds meritless. First, the Trustee argues that the December 13 letter acted as notice for the ESOP policy because it made American Casualty aware of the potential claim. Pretermitting that the December 13 letter referenced a wholly separate policy,[14] this argument has no merit considering *Barham's* strict construction of notice provisions in claims made policies. Allowing constructive notice to satisfy the strict reporting requirements in Section 5(E) of the policy would effectively "read out" those provisions for which the parties contracted.[15]

To support the same argument, plaintiff further contends that notice was adequate because the author of the December 13 letter "was aware of the stock transaction and, in

fact, had the stock transaction in mind when she sent the December 13 notice"[16] although she failed to note any transaction, including the stock transaction at issue here. Policy Section 5(E)(1)(b) provides in pertinent part:

> "If, during the Policy Period, the Insureds shall ... (b) become aware of any *occurrence* which may subsequently give rise to a claim being made against the Insureds, or any of them for a Breach of Fiduciary Duty; and shall during such period give *written notice thereof* to the Insurer," then any claim subsequently made against them shall be covered by the policy (emphasis supplied).

Even if the December 13 letter applied to the ESOP policy, the court seriously doubts that the letter would serve as adequate notice because it fails to cite "occurrence."[17]

Second, plaintiff argues that its failure to provide more detailed notice is irrelevant because the policy did not require it. It argues, third, that its disclosures should have resulted in a heightened curiosity or concern by American Casualty when it received the ESOP notices. These arguments fail[18] for the same reasons.

## III.  CONCLUSION

The court finds no ambiguity in the terms of the policy and no dispute about the underlying material facts. Sun Belt failed to comply with the reporting requirements of policy Section 5(E)(1)(b). Because the court finds that no genuine issue of material fact exists regarding either timely or adequate notice, it dismisses plaintiff's claim against American Casualty on summary judgment. Accordingly,

---

**13.** The court in *Barham* based its decision on a strict interpretation of claims-made policies. This reading of the prejudice rule comports with *Barham's* rationale.

**14.** *Supra* note 9.

**15.** *See Barham*, 995 F.2d at 604 n. 9 (recognizing that in claims made policy, notice requirement is equally important as requirement that claim be asserted during policy period because transmittal of notice triggers coverage).

**16.** Pl.'s Mem. in Opp'n at 8.

**17.** Instead, it simply declares in two sentences that it serves as formal notification that Sun Belt might file claims against certain bank officers, directors and employees. It notes that the bank is "not cognizant of any actual claims being made against officers, directors or employees by any party at this time." Ex. C., American Casualty's Mem. for Recons. and Summ. J.

**18.** *See Barham*, 995 F.2d at 604 n. 9 (allowing constructive notice to satisfy reporting requirement would wrongfully "read-out" unambiguous policy provisions for which parties contracted).

**IT IS ORDERED** that American Casualty Company of Reading, Pennsylvania's motion for reconsideration is **GRANTED** and its motions for summary judgment on the issues of timely and adequate notice are **GRANTED,** thus dismissing Plaintiff's claim against it.