152 So.2d 566 (1963)
Mrs. Edith RAY, Plaintiff-Appellee-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al. Defendants-Appellees-Appellant.
No. 9910.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
Booth, Lockard, Jack, Pleasant & Le-Sage, Shreveport, for Mrs. Edith Ray, plaintiff-appellee-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for Government Employees Insurance Company, defendant-appellant.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Calvin L. Idom and State Farm Mut. Auto. Ins. Co., defendantsappellees.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff, Mrs. Edith Ray, seeks to recover damages for personal injuries sustained by her arising out of a motor vehicle rear-end collision *567 of March 4, 1961, in a railway underpass on Hollywood Avenue in the City of Shreveport. Involved were a Ford pickup truck of E. D. Ray, plaintiff's husband, with whom she was riding as a guest passenger, and a Ford automobile of Calvin L. Idom. Made defendants are Idom and his insurer, State Farm Mutual Automobile Insurance Company, against whom recovery is primarily sought; and, in the alternative, against said defendants and Ray's insurer, Government Employees Insurance Company; and, further in the alternative, against the latter insurer alone.
The conclusion reached by the trial court was that the accident was caused solely through the fault and negligence of E. D. Ray. Accordingly, judgment was rendered in plaintiff's favor against the defendant, Government Employees Insurance Company, for the sum of $3,000. Her demands against the other defendants were rejected and, as to them, her suit was dismissed. From a judgment thus rendered and signed, both plaintiff and the condemned defendant appealed.
The defendant, Government Employees Insurance Company, in a specification of errors, contends that the court erred in holding: (1) that this defendant's policy afforded coverage to E. D. Ray on the pickup truck involved in the accident; (2) that E. D. Ray was guilty of negligence; and (3) that Calvin L. Idom was free of negligence, which was a proximate cause of the accident. Plaintiff, on the other hand, contends that the court erred: (1) in concluding that the acts of negligence of E. D. Ray were the sole, proximate cause of the accident; and (2) in fixing an award inadequate for the injuries sustained by her.
The position of defendants Idom and his insurer is that Idom was confronted with an emergency, not of his own making or choosing, which was a circumstance not to be reasonably expected or anticipated by him in which his reactions and efforts to avoid were those of a reasonably prudent person.
Logically, first for consideration is the matter of coverage of the policy of insurance of the defendant, Government Employees Insurance Company. The material facts relative to this defense are not in dispute. This defendant issued the policy of public liability to E. D. Ray covering a 1953 model Mercury. After the occurrence of an accident in December, 1960, involving the Mercury, Ray purchased the Ford pickup truck which was involved in the accident presently under consideration. More accurately stated, the issue is whether the pickup truck was a replacement vehicle within the terms of the policy.
The policy, under PART I, pertaining to "LIABILITY," provides:
"OWNED AUTOMOBILE" means
* * * * * *
"(c) a private passenger, farm or utility automobile * * * ownership of any of which is acquired by the named insured during the policy period, provided
(1) it replaces a described automobile * * *."
Under "CONDITIONS" of the policy, we find this provision:
"2. PREMIUM: If the named insured disposes of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the company during the policy period of such change. * * *." (Emphasis supplied.)
It clearly appears, from the above-quoted provisions of the policy, that, if the insured acquires another motor vehicle, of the kind and character described, during the policy period, and it replaces the vehicle named in the policy, the policy affords coverage to the replacement vehicle during the term of the policy.
"Replace" means "To take the place of; to serve as a substitute for, or successor of; supplant; * * *. To fill the place of; to *568 supply an equivalent for; * * *." "Replacement" is defined as an "Act of replacing, or state of being replaced. * * *. A new fixed asset, or portion of an asset, which takes the place of a discarded asset, or portion of an asset." Webster's New International Dictionary, Second Edition.
For a period of time prior to the purchase of the Ford truck, the Mercury automobile was completely inoperable. Ray placed it in his yard jacked up off the ground, after which it was never used. Following the purchase of the Ford, the tires of the Mercury were removed and used on the Ford. The Mercury was subsequently sold to a party who had need of the engine. The Mercury was never used after the Ford truck was acquired. Ray testified that he acquired the truck to replace the Mercury automobile as a means of transportation which he needed.
Under the quoted provisions of the policy, replacement is not contingent upon the insured's selling or otherwise disposing of the vehicle, nor upon a condition that the vehicle has become inoperable or unusable. Replacement is not so conditioned. That the vehicle was inoperable is a corroborative fact that the newly acquired vehicle replaced the former one.
The conclusion is, therefore, inescapable that the Ford pickup truck was a replacement vehicle in lieu of the Mercury automobile, and the public liability policy afforded coverage. The requirement that the insured give the insurer notice of the acquisition of an additional automobile within 30 days of its acquisition is inapplicable where the acquired automobile is a replacement for the one described in the policy.
For an appreciation of the issues relating to the question of defendants' liability, an understanding of certain of the established facts is a prerequisite. The scene of the accident was an underpass over 76 feet in length, in the nature of a dip in the street, and was of a narrow, 2-lane construction, divided by a concrete ledge and pillars. The street was wet, from a recent rain, at the time of the accident. The bottom of the passageway was covered with water to a depth of at least an inch or two. The darkness of the passageway was intensified by the late-afternoon rainy, cloudy atmosphere. Near the eastern exit of the underpass was a huge hole in the pavement in the eastbound traffic lane.
Hollywood Avenue is a main thoroughfare leading from the city to the municipal airport. Four motor vehicles, at least, constituted a line of traffic proceeding through the underpass immediately prior to the occurrence of the accident. The procession was led by a car whose driver was unknown, followed next in line by a car of one Johnson Lockett, in third place by the Ray truck, and fourthly by the Idom automobile.
Lockett testified that the forward car slowed and passed to the left of the hole in the pavement; that the car obstructed his view of the hole until the car had continued past; whereupon, then seeing the obstruction, he was forced to suddenly apply his brakes and stop before proceeding.
Ray testified that he was following the Lockett car at a distance of about a car's length; that, from his frequent use of the street, he knew of the hole in the pavement; that, when the brake lights flashed on the Lockett car, he applied his own brakes, skidded his truck almost to but not quite within striking distance of the rear end of that car; that, with the expectation of avoiding the hole in the pavement, he steered his vehicle to the left. This latter action caused him to strike a pillar of the underpass as he came to a stop. Ray estimated his own speed, as well as that of the Lockett car, at 20-25 m. p. h.
Idom testified that, as he entered the underpass, he was "40 or so feet" behind the Ray truck, and that he continued at a distance of 30-40 feet to its rear at a speed estimated by him at 20 m. p. h. In describing *569 the incident, Idom stated, with reference to Ray:
"He had already applied his brakes when I really noticed him. As I looked up it was when he hit the concrete, and he had applied his brakes and slowed down some, so I was a little closer when I got into his view when I looked up."
Idom further testified that, after applying his brakes and skidding his car 10-12 feet, he, only momentarily after the Ray truck collided with the pillar, struck the Ray truck. Idom never saw brake lights flash from the Ray truck. Idom, as well as Ray, was fully aware that the underpass afforded a darkened passageway, in the bottom of which there was usually standing water.
Charges of negligence directed by Mrs. Ray to Idom consisted of following too closely, failing to maintain a proper lookout or to maintain control of his vehicle, or to bring his automobile to a stop before striking the forward truck. In the alternative, plaintiff charges that, concurrent with Idom's negligence, Ray's failure to bring his vehicle to a stop before striking the pillar was a proximate cause of the accident.
The defendant, Government Employees Insurance Company, for the reasons and upon the grounds asserted by plaintiff, contends that Idom's negligence was the sole cause of the accident. However, the defendants, State Farm Mutual Automobile Insurance Company and Idom, contend that the sudden stoppage of the vehicles ahead of Idom was the sole cause of the accident.
As heretofore observed, both Ray and Idom were familiar with the locationthe narrowness and the darkness of the passageway, which was usually wet. Ray admitted knowledge of the presence of the obstruction in the street. Indeed, he said he made a movement to avoid it, although he saw, or should have seen, the car ahead proceeding into it.
Idom's testimony, to which we have referred, established his own failure to keep or maintain a proper lookout. Under the circumstances existing at the time and to which we have also referred, Idom was following, too closely, the preceding vehicle.
The general statutory rule is that
"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway."
LSA-R.S. 32:234, subd. A.
It is urged, however, that drivers Ray and Idom were each faced with an emergency not of their choice or making which served to except them from the application of the aforesaid rule. With reference to such an exception, we had the occasion, in Nomey v. Great American Indemnity Company, La.App. 2d Cir., 1960, 121 So.2d 763, 765, to state:
"We think our jurisprudence has firmly established the rule that failure to maintain a specified distance between automobiles does not of itself constitute negligence; that a driver is entitled to rely upon the assumption that the car ahead is being driven with care and caution in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic.
"As long ago as 1935, in Hill v. Knight [La.App.], 163 So. 727, this court recognized and approved the rule that a following driver should drive at such speed and maintain such an interval as would enable him to avoid collision with a leading car under circumstances which should reasonably be anticipated."
Rhea v. Daigle, La.App. 1st Cir., 1954, 72 So.2d 643 (writs denied), followed and elaborated upon the aforesaid rule and cited, among others, Adams v. Morgan, La.App. 1st Cir., 1937, 173 So. 540; Reeves v. Caillouet, La.App. 1st Cir., 1950, 46 So.2d 373. *570 See, also: Peranio v. Superior Insurance Company, La.App. 1st Cir., 1954, 76 So.2d 315 (writs granted); Soudelier v. Johnson, La.App. 1st Cir., 1957, 95 So.2d 39.
A restatement of the rule is found in 5A Am.Jur., verbo "Automobiles and Highway Traffic," § 204, page 354, wherein it is recited:
"The driver of an automobile is not bound to anticipate negligence on the part of another driver, in the absence of anything to indicate otherwise. The care and diligence of the operator of a motor vehicle is to be measured in view of the assumption that others will not drive in negligent manner, but this assumption does not apply if one sees, or by the exercise of ordinary care and prudence should see, that some other driver will not obey the law or is unable to do so."
While we are in accord with the principles relied upon, where applicable, we do not find such principles applicable here under the facts and circumstances established in the record, as shown hereinabove. The street upon which this accident occurred is a busy one and it is not unusual for cars to become involved in what may be described as a "line of traffic," such as was the case with the four vehicles herein concerned. When such a line of vehicles is proceeding along a busy street, it is the duty of each driver to so regulate the speed of his own automobile and the distance at which he follows the vehicle ahead, and to maintain such a lookout and keep his vehicle under such control as to meet the usual traffic developments. This is the principle which we think finds application to the facts of this case. Under a similar state of facts, this court had occasion to remark, in Gandy v. Arrant, La.App. 2d Cir., 1951, 50 So.2d 676, 678-679:
"A prudent person, traveling the highway, who becomes one link in a line of vehicles, must necessarily be on the alert, observing the car ahead and the general traffic situation in front. In the case before us, had defendant Arrant been alert and observant of traffic conditions ahead, he could and would have observed the stopping of the Livingstone truck, which was larger than the following Chevrolet and Nash passenger vehicles. Evidently the Chevrolet driver immediately behind the truck was alert as this vehicle came to a timely stop. Likewise the plaintiff's Nash, the third car in line, was brought to a stop without crashing into the vehicle ahead. Had defendant Arrant been keeping a proper lookout ahead, he likely would have noted the existence of the bridge, the presence of the truck approaching from the opposite direction, and surely would have noted the stopping of the beverage truck and the successive stops of the Chevrolet and Nash automobiles, and would have had sufficient time to have brought his own vehicle to a stop before crashing into the rear of plaintiff's car. Arrant's failure to successfully stop his car indicates that he was guilty of one or more of the acts of negligence charged in plaintiffs' petition. Either he was following the plaintiff's car more closely than was reasonable and prudent, having due regard to the speed of the preceding vehicle and traffic conditions, or he was not keeping a proper lookout ahead and failed to apply his brakes seasonably, or he was driving his car at an excessive rate of speed under the circumstances. Arrant was guilty of negligence in crashing into the rear of plaintiff's vehicle, and we think it is of no consequence that the record does not establish definitely whether his failure to timely stop his vehicle was due to his neglect to keep a proper lookout ahead, his neglect to promptly apply his brakes, or to his following too closely the car of Harold Gandy in view of his own speed and the traffic situation generally. The record does establish that the collision was due either to one or to a combination of *571 two or more of these specific acts of negligence above set forth."
Thus, as was stated in McNulty v. Toye Bros. Yellow Cab Co., La.App.Orleans, 1954, 73 So.2d 23, 26,
"Courts have come to the realization that traffic conditions of today being what they are, a person operating an automobile vehicle in a line of traffic must be at all times vigilant and alert and must keep a sharp lookout for sudden maneuvers by vehicles ahead and appraise carefully the existing conditions." See, also: Benenate v. Brooks, La.App.Orleans, 1957, 95 So.2d 757.
Our conclusion is that, under the conditions and in the manner in which both Ray and Idom operated their respective vehicles, the sole and proximate cause of the accident was the concurrent negligence of both drivers. Hence, the defendants are solidarily liable and must respond in damages to Mrs. Ray for the injuries sustained by her.
Therefore, finally for resolution is a question of the award of damages sufficiently adequate to compensate Mrs. Ray for the injuries sustained. By force of the impact of the collisions, Mrs. Ray was first thrown forward, bracing herself against the dashboard, thus cushioning and minimizing the force of the impact. She was then thrown violently backward when the truck in which she was riding was struck from the rear. Her head was thrust backward into the rear window with such force as to shatter the glass window.
The nature of the injury suffered by Mrs. Ray was characterized as a whiplash type injury. On the day of the accident, she was treated by her family physician, after which she was advised she might return home. Pain and suffering increased to such intensity that, after an elapse of three or four days, it was necessary that she be hospitalized for a period of seven days. During this time, she was in traction and was administered the usual treatments for her type of injury, sedation and physiotherapy for relief of pain. Mrs. Ray remained at home until March 20, 1961, when she was returned to the hospital, where she remained under treatment until April 1, 1961. During this period, she was again in traction and was given physiotherapy treatments. During the first week of May, 1961, she returned to her physician with complaints of continued pain and suffering. X-rays were taken; she was administered treatments by Microtherm until June 2, 1961, with negative results.
A neurosurgeon was consulted on June 20, 1961, to whom she also complained of pain and distress. Considerable muscle spasm, usually accompanied by pain, was noted in the cervical as well as the thoracic spinal area. Testifying on trial 14 months after the accident, plaintiff complained of constant and continuous pain and suffering. Her activities, because of the injuries sustained, were greatly curtailed. She experienced difficulty with her housework. From an examination of August 11, 1961, the neurosurgeon found that plaintiff continued to have some minor tenderness along the left thoracic perispinal muscle group and in the left trapezius shoulder area.
An award of $5,000 is, in our opinion, reasonable and consistent with awards made in similar cases.
For the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is therefore Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff, Mrs. Edith Ray, and against the defendants, Government Employees Insurance Company, Calvin L. Idom, and State Farm Mutual Automobile Insurance Company, in solido, for the full sum of $5,000, with 5% per annum interest thereon from judicial demand until paid, and for all costs including the cost of this appeal; and, as thus amended and recast, the judgment is affirmed.
Amended and affirmed.