474 So.2d 976 (1985)
John B. POMARES
v.
The KANSAS CITY SOUTHERN RAILWAY COMPANY, Liberty Mutual Fire Insurance Company, and Eugene H. Laws.
No. 85-CA-131.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1985.
Rehearing Denied September 17, 1985.
Writ Denied November 8, 1985.
*977 Borrello & Huber, Bruce J. Borrello, Metairie, for Liberty Mut. Fire Ins. Co., garnishee-appellant.
Mack & O'Neal, Velma P. O'Neal, Hammond, for John B. Pomares, plaintiff-appellee.
John M. Holahan, New Orleans, for Eugene H. Laws, defendant-appellee.
Before CHEHARDY, CURRAULT and DUFRESNE, JJ.
CHEHARDY, Judge.
Liberty Mutual Fire Insurance Company, garnishee, appeals a judgment ordering it to satisfy an executory judgment against its policyholder, Eugene Laws.
John Pomares, the judgment creditor, sought satisfaction of a judgment in the amount of $22,250, plus interest and costs, obtained in a tort suit against Laws and other parties. In response to the garnishment interrogatories, Liberty Mutual admitted that it had a policy of automobile liability insurance issued to Eugene Laws in effect on April 7, 1977, the date of the accident made the basis of the suit. However, Liberty Mutual asserted that the vehicle involved in the accident was not an "owned automobile" or "insured automobile" as defined by the policy, so that Liberty Mutual was not liable to Laws for any judgment arising from that accident.
Pomares filed a rule to traverse the answers to his interrogatories. The deposition of Eugene Laws was taken and the matter submitted to the court for decision based on the information contained therein. The district judge ruled that the vehicle involved in the accident was a replacement vehicle for another listed on the policy and therefore was covered.
At issue is the status of a 1977 Chevrolet pick-up truck purchased by Laws on November 30, 1976 but not specifically added to his policy until April 29, 1977. Pomares and Laws contend the 1977 Chevrolet was an insured vehicle because it was a replacement for a 1968 Chrysler Newport that was listed on the policy. Liberty Mutual contends the 1977 Chevrolet was actually intended by Laws as a replacement for a 1968 Chevrolet pick-up truck he had removed from the policy in June 1976. As such, it would not qualify under any of the policy definitions as an insured vehicle.
On appeal Liberty Mutual asserts, first, that the 1977 Chevrolet pick-up truck involved in the accident was not insured because it did not fit within the definition of a replacement vehicle nor was it specifically added to the policy until three weeks after the accident. Secondly, Liberty Mutual denies coverage because Eugene Laws never notified his insurer of the lawsuit, as the policy required, thus Liberty Mutual did not learn of the suit until it was served with the garnishment petition, some 6½ years after the accident and 1½ years after judgment had been rendered against Laws.
*978 Because the issue of notice is a threshold question, we discuss that first. The notice provisions of the policy state, in pertinent part,
"CONDITIONSPARTS I AND II
* * * * * *
"2. Premium
* * * * * *
"If the named insured acquires ownership of a private passenger or utility automobile or home trailer during the policy period, he must notify the company within 30 days after the date of such acquisition of his election to make this policy applicable to such automobile, except that the insurance under the Liability and Medical Expense Coverages shall apply automatically to such automobile if it replaces an owned automobile. * * *.
* * * * * *
"5. Notice
In the event of an accident, occurrence or loss, written notice * * * shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. * * * If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."
* * * * * *
"7. Action Against Company
Part I No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor shall an action lie under the Liability Coverage until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
"Any person * * * who has secured such judgment * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person * * * shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured * * *. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."
Liberty Mutual asserts, under these provisions, it is not liable because it did not receive notice of the suit until the plaintiff attempted to execute the judgment by garnishment against the insurance policy.
We find no merit in this argument. Liberty Mutual has neither alleged nor shown any prejudice resulting to it by the lack of notice. Its insured, Laws, was represented by counsel during the tort suit. Our review of LSA-R.S. 22:655 (the Direct Action Statute) and the jurisprudence dealing with such notice provisions establishes that an insurer may not raise the nonprejudicial failure of the insured to give proper notice of suit as a defense to valid claims by a third party. See West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); Chennault v. Dupree, 398 So.2d 169 (La. App. 3 Cir.1981); Fakouri v. Insurance Co. of North America, 378 So.2d 1083 (La. App. 3 Cir.1979); O'Neal v. Southern Farm Bureau Insurance Co., 325 So.2d 887 (La.App. 1 Cir.1976); Miller v. Marcantel, 221 So.2d 557 (La.App. 3 Cir.1969). (Further, of course, the policy's prohibition of suit against the insurer is invalid in Louisiana because of the right of direct action created by R.S. 22:655.)
The more difficult question is whether the 1977 Chevrolet pick-up truck fit within the definitions of "owned automobile" so as to be covered under the policy. The copies of the insurance policy in evidence establish that on June 4, 1976 Laws eliminated coverage on a 1968 Chevrolet ¾-ton pick-up. On October 1, 1976 the policy declarations page listed a 1973 Plymouth Satellite, a 1967 Ford Mustang and a 1968 Chrysler Newport. On October 14, 1975 a new declarations page was issued, listing a 1973 Plymouth Satellite, a 1976 Dodge Aspen *979 and a 1968 Chrysler Newport. On April 29, 1977 another declarations page issued, listing a 1973 Plymouth Satellite, a 1976 Dodge Aspen, a 1968 Chrysler Newport and the 1977 Chevrolet ¾-ton pick-up.
The trial judge found from Laws' testimony that the 1968 Chrysler was not operative at the time of the accident and therefore concluded the 1977 Chevrolet pick-up replaced the 1968 Chrysler rather than the 1968 Chevrolet pick-up.
Under the applicable policy provisions, Liberty Mutual agreed to pay on behalf of the insured all sums the insured became legally liable to pay as damages arising out of the use of an owned automobile. (Part IProtection Against Liability, Medical Expense and Uninsured Motorists and Accidental Death Benefit, "Liability Coverage") The policy states,
"When used with respect to Part I:
* * * * * *
"`owned automobile' means
"(a) a private passenger or utility automobile or home trailer described in this policy for which a specific premium charge indicates that coverage is afforded,
"(b) a private passenger or utility automobile or home trailer ownership of which is acquired by the named insured during the policy period, provided
"(1) it replaces an owned automobile as defined in (a) above, or
"(2) the company insures all private passenger and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days thereafter of his election to make this and no other policy issued by the company applicable to such automobile or trailer,
"(c) a temporary substitute automobile [defined as `an automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction.']."
Obviously the 1977 Chevrolet does not fit within definition (a) of an "owned automobile" because it was not described on the policy at the time of the accident. Nor could it be considered an "owned automobile" under paragraph (b)(2), because Laws failed to notify Liberty Mutual within 30 days of its purchase of his intention to have it covered under the policy. Further, the 1977 Chevrolet clearly was not a "temporary substitute automobile," because it was owned by Laws, the named insured.
Accordingly, the only category under which the 1977 Chevrolet could be considered an "owned automobile" subject to coverage is if it replaced an automobile described on the policy, pursuant to paragraph (b)(1). The policy does not define "replaces." Liberty Mutual contends that the 1977 Chevrolet pick-up was intended by Laws to replace the 1968 Chevrolet pick-up, because he used the 1968 Chevrolet as a trade-in on the purchase of the 1977 Chevrolet. Under this reasoning, because the 1968 Chevrolet had been removed from the policy the preceding June, the 1977 Chevrolet did not replace an automobile described on the policy and thus was not insured.
The trial judge concluded, instead, that because the 1968 Chrysler Newport was inoperative at the time the 1977 Chevrolet was purchased and was not repaired until after the accident with the new truck, the new Chevrolet was used as a replacement for the Chrysler. Because the Chrysler was listed on the policy at the time of the accident, therefore, the 1977 Chevrolet was an "owned automobile" under definition (b)(1).
In Ray v. State Farm Mutual Automobile Insurance Co., 152 So.2d 566, 567, 568 (La.App. 2 Cir.1963), the court defined "replace":
"`To take the place of; to serve as a substitute for, or successor of; supplant; * * *. To fill the place of; to supply an equivalent for; * * *.' `Replacement' is *980 defined as an `Act of replacing, or state of being replaced. * * *. A new fixed asset, or portion of an asset, which takes the place of a discarded asset, or portion of an asset.' Webster's New International Dictionary, Second Edition."
In that case the newly-acquired automobile was used in place of the insured's one other automobile, which was then inoperable and was never used again by the insured. The court in Ray held that the new car replaced the old one. Here, the 1968 Chrysler was ultimately repaired and given to Laws' daughter. Further, the 1977 Chevrolet was acquired several months before the Chrysler was given away. Under these circumstances, Liberty Mutual asserts, the Ray case is inapplicable.
However, the Ray court also noted,
"Under the quoted provisions of the policy, replacement is not contingent upon the insured's selling or otherwise disposing of the vehicle, nor upon a condition that the vehicle has become inoperable or unusable. Replacement is not so conditioned. That the vehicle was inoperable is a corroborative fact that the newly acquired vehicle replaced the former one."
152 So.2d at 568.
The trial judge here noted that Mr. Laws' testimony was somewhat confusing, but concluded nonetheless that the 1968 Chrysler, rather than the 1968 Chevrolet, was the replaced vehicle: "According to Laws' testimony, the 1968 Chrysler was not operativei.e., the transmission was outand therefore could not be driven. Since this testimony was never refuted, this Court has no reason to disbelieve its veracity."
As stated in Traders & General Ins. Co. v. Tillman, 349 So.2d 1370, 1372 (La.App. 2 Cir.1977),
"The purpose of these differences [between a newly-acquired replacement vehicle and a newly-acquired additional vehicle] is obvious. The replacement of a vehicle will result in little or no increase in the risks insured and the premium charged for liability insurance will remain substantially the same. However, if an additional vehicle is purchased, it will proportionately increase the risks to be insured and will increase the premium owed to the insurer."
Any doubt or ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured and against the insurer; where that ambiguity relates to a provisions that limits liability under the policy, the provision will be interpreted liberally in favor of coverage. Credeur v. Luke, 368 So.2d 1030 (La.1979).
Mr. Laws' testimony was that, after he acquired the 1977 Chevrolet, he used it in place of the 1968 Chrysler, which had been inoperable for some time. Obviously, he was creating little or no increase in the risk to his insurer because at that time the new Chevrolet was not an additional vehicle to the ones described in the policy for which premiums had been paid. Based on this testimony, the reasoning quoted from the Traders & General case and the general rules relative to the interpretation of insurance contracts, we conclude the trial judge's ruling was correct.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.