663 So.2d 859 (1995)
Thomas R. ELROD
v.
P.J. ST. PIERRE MARINE, INC. and Ocean Marine Indemnity Company.
No. 95-CA-295.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 1995.
Writ Denied February 2, 1996.
*860 Madeleine M. Landrieu, Gainsburgh, Benjamin, Dallon & David, New Orleans, for Appellant Thomas R. Elrod.
Robert C. Clotworthy, Trial Atty., David A. Abramson, Phelps Dunbar, L.L.P., New Orleans, for Appellee Ocean Marine Indem. Co.
Before GAUDIN, C.J., and DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Thomas R. Elrod, appeals from the trial court judgment rendered in favor of defendant, Ocean Marine Indemnity Company (OMI), granting an involuntary dismissal of the case. For the reasons which follow, we affirm.
On April 1, 1986, plaintiff, employed aboard the M/V DESTRY S, a vessel owned by P.J. St. Pierre Marine, Inc. (P.J.), sustained an injury. OMI provided both protection and indemnity insurance to P.J. for certain sums which P.J., as owner of the M/V DESTRY S, was liable to pay for bodily injury or illness. The policy in effect at the time of plaintiff's accident covered from January 31, 1986 though January 31, 1987, with policy limits of $250,000, inclusive of defense costs.
Immediately following his injury, plaintiff reported it to his employer and sought from his employer maintenance and cure benefits pursuant to the general maritime law. These benefits were initially paid to plaintiff by P.J.
On May 28, 1986, Gulf Coast Marine, Inc., the managing general agent of OMI, appointed an adjuster, E.J. Halverson & Associates (Halverson), independent contractors, to investigate the claim. Halverson contacted *861 plaintiff's attorney about the claim. On April 17, 1987, plaintiff's attorney advised Halverson that plaintiff had not received maintenance payments for three weeks. Halverson contacted P.J. and was advised that P.J. was experiencing financial difficulties and was unable to pay plaintiff's maintenance. As a result, Halverson made arrangements with OMI to handle the payments of maintenance to plaintiff. Consequently, on May 29, 1987 Halverson began paying plaintiff maintenance and cure on behalf of OMI.
On June 8, 1987 Halverson received an opinion from Dr. Kenneth Saer that plaintiff had reached maximum medical cure. Halverson forwarded the report to plaintiff's counsel and advised him that maintenance would be discontinued absent medical information to the contrary. Subsequently, plaintiff's counsel forwarded another doctor's report to Halverson, regarding a second injury that had allegedly been caused as a direct result of the first injury. Dr. Saer reexamined plaintiff and concluded that there was no evidence that plaintiff's second injury was related to his first. The parties attempted settlement negotiations, but when they broke down, there was no further communication between plaintiff or his counsel and Halverson.
Next, plaintiff's former counsel referred the case to present counsel to pursue litigation on behalf of plaintiff. On July 8, 1988 plaintiff filed suit in federal district court against P.J. On July 15, 1988, personal service was made on P.J. St. Pierre as the registered agent of P.J. Notice of the lawsuit was never forwarded to OMI, its agents or representatives. P.J. failed to answer the suit despite requests by plaintiff's counsel to do so. Plaintiff obtained a default judgment against P.J. on January 31, 1990 in the amount of $486,646. Prior to the default judgment, plaintiff's counsel did not initiate communication with Halverson or OMI and conversely, Halverson did not again attempt to communicate with plaintiff or plaintiff's counsel after settlement negotiations broke down.
OMI first received notice of plaintiff's lawsuit against P.J. by plaintiff's counsel on August 27, 1990, almost seven months after the default judgment had been entered.
On April 20, 1993, plaintiff filed a Petition to Make Judgment Executory and for Garnishment. After filing answers to interrogatories, OMI filed a separate suit by Petition for Declaratory Judgment, arguing that it did not provide coverage for the claim because P.J. did not comply with the policy conditions. The two matters were consolidated. Trial was held on January 5, 1995. At the close of plaintiff's case, after having heard the testimony of P.J. St. Pierre, Eric Halverson, and Lloyd Koepp, the trial judge granted OMI's motion for involuntary dismissal and dismissed plaintiff's action with prejudice. It is from this judgment that plaintiff now appeals.
The issue presented here is whether a policy of protection and indemnity coverage issued by OMI to P.J. is available to plaintiff for satisfaction of the default judgment rendered in his favor against P.J. in the amount of $486,646.
At issue are clauses in the insurance policy which condition coverage on the prompt forwarding of process and pleadings to the insurer upon receipt by the insured. The policy provides in pertinent part:
GENERAL CONDITIONS
NOTICE OF LOSS
It is a condition of this Policy that the Assured give prompt notice to the Underwriters of any casualty or occurrence which may result in a claim under this Policy.
FORWARDING OF PROCESS
It is a condition of this Policy that the Assured forward to the Underwriters, promptly upon receipt, copies of all communications, legal process and pleadings relating to any casualty or occurrence which may result in a claim under this Policy.
SETTLEMENT OF CLAIMS
1) It is a condition of the Policy that the Assured shall not make any admission of nor agree to assume any liability either before or after any casualty or occurrence *862 which may result in a claim under this Policy.
2) It is a condition of this Policy that the Assured shall take such steps to minimize and avoid liability, before and after any casualty or occurrence, as would be taken by a prudent uninsured person.
3) The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim covered by this Policy, and in any event, the Underwriters shall direct the progress of such litigation or negotiations.
OMI argues that the above policy provisions, and the breach of those provisions by P.J., relieve it of any liability to plaintiff on the default judgment. OMI was successful in this argument before the trial court.
On appeal plaintiff presents three arguments in opposition to the trial court ruling and in favor of a finding that OMI should be held liable to plaintiff for injuries he suffered while employed on the insured vessel during the coverage period, and that violation of the policy provisions by P.J. should not void the insurer's liability on plaintiff's claim. First, plaintiff argues that the Forwarding of Process provision is ambiguous and the ambiguity should be interpreted against the insurer, thus making the clause ineffective. Second, plaintiff argues that the actions of the insured, over which plaintiff has no control, should not be permitted to void the insurance coverage that existed at the time of the accident. The claim of a third party tort victim should not be defeated by these policy provisions where there is no duty placed on the third party to notify or contact the insurer. And finally, plaintiff argues that under the circumstances of this case, where the insurer had knowledge of the claim, any prejudice it might have suffered because of the insured's failure to forward process was a result of its own neglect in failing to make reasonable inquiry after notice of the claim.
Plaintiff first argues that the Forwarding of Process policy provisions are ambiguous in that they do not clearly require that the insured give the insurer notice of suit being filed where the insured has provided the insurer with notice of the occurrence "which may result in a claim". Plaintiff argues that once the insured notified the insurer of the incident "which may result in a claim" the insured satisfied his obligation under the policy. We disagree.
Contrary to plaintiff's arguments, we find the policy provisions on this point rather explicit. As quoted above, there are two applicable policy provisions pertinent to this argument. The first provision, the Notice of Loss clause, requires prompt notice by the insured to the insurer of any "occurrence which may result in a claim under this Policy." In addition to that provision is the Forwarding of Process clause which clearly requires the prompt forwarding upon receipt by the insured to the insurer of "copies of all communications, legal process and pleadings relating to any casualty or occurrence which might result in a claim under this Policy." Clearly, with two separate policy clauses, one requiring notice of the occurrence and the other requiring the prompt forwarding to the insurer of copies of process and pleadings, two distinct notice requirements are provided in the policy and the Forwarding of Process provisions are not satisfied, as plaintiff argues, by notice of the "incident which might result in a claim". We do not find the policy provisions ambiguous on this point.
Plaintiff's second argument raises the question of whether a tort victim's claim against the insurer of the tortfeasor can be defeated by a policy provision conditioning coverage on notice of process and an insured's failure to notify the insurer after suit is filed. After reviewing the record and applicable jurisprudence, we find that the tort victim's claim against the insurer can be maintained despite the insured's failure to notify the insurer of the filing of suit unless, as here, the insurer proves sufficient prejudice to defeat the claim.
The three leading Louisiana cases addressing this issue are: West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950); Pomares v. Kansas City Southern Ry. Co., 474 So.2d 976 (La.App. 5th Cir.1985); and Hallman v. Marquette Casualty Co., 149 So.2d 131 (La. *863 App. 2nd Cir.1963). Plaintiff relies on Pomares and West in support of his position and defendant relies on the Hallman case.
Pomares is the most recent of these cases addressing the issue of whether an insurer can escape liability to an injured third party because the insured failed to give the policy required notice of suit. In Pomares, the plaintiff had been injured in a car accident and had obtained judgment against the tortfeasor/insured. The judgment creditor sought satisfaction of the judgment from the insurer. The insurer asserted that it was not liable because it did not receive notice of the suit until plaintiff attempted to execute the judgment by garnishment against the insurer based upon the policy. The policy required notice of suit as an express condition precedent to the insurer's liability under the policy.
This court held that the insurer could not, without a showing of prejudice, use the failure of the insured to give proper notice of suit to defeat a valid claim by the third party. It then upheld liability because the insurer failed to prove any prejudice resulting from the lack of notice. The court focused on the fact that the insured had been represented at trial by able counsel as evidence negating the existence of prejudice to the insurer.
The Pomares court relied upon West v. Monroe Bakery, supra, in support of its ruling. West is the leading Louisiana Supreme Court case on the issue of delayed notice. In West, the court addressed the question of whether an insurer could escape liability to a third party under the Direct Action Statute because of the insured's failure to give notice of the accident, an express condition precedent to coverage in the policy. The court held that an injured third party who is not at fault does not lose his cause of action because of the insured's breach of the notice provisions in the policy. The court rested its decision on previous case law and on a comprehensive analysis of the legislative intent behind the Direct Action Statute.
The Court in West did not directly address the question of whether the insurer can avoid liability by proving it was prejudiced by the lack of notice. But the decision implies that such is the case. The court stated that the injured third party should not be divested of his direct action "except in a very clear case."
Pomares, relying on West, fully recognized that liability of the insurer could be avoided by proof of prejudice. But the showing must be clear and convincing. The Pomares court found no such showing even where the insurer received notice of the case after judgment, missing the opportunity to defend the case, in view of the fact that the insured did have counsel at the trial.
As a result of these decisions, the third party tort victim can recover from the insurer, where the insured himself cannot because of the insured's failure to comply with the express conditions of the policy. The rationale supporting this seeming dichotomy is that the policy provisions do not control the scope of the injured third party's rights. Rather, his rights against the tortfeasor's liability insurer are premised upon the direct action statute, coupled of course with the tortfeasor's negligence. The third party's rights vest at the time of the injury, whereas the rights of the insured (against his insurer) remain subject to conditions set out in the policy regarding events which arise after the injury, (the notice requirement).
Thus, the injured third party has two avenues of recovery from the insurer, one by virtue of the insurer's liability to the insured, and the other premised on the insurer's liability to the injured party in a direct action lawsuit. The injured party's right to recover in both instance may be defeated if the insurer can demonstrate prejudice from the insured's failure to comply with the policies' notice provisions.
The Hallman case, relied on by OMI, is contrary to the rationale discussed above in Pomares and West. In Hallman, the court reversed a judgment against a liability insurer which had been condemned to pay the amount of a default judgment rendered against the insured where the insurer had no knowledge of the suit against the insured until the judgment had become final and executory. The court relied on cases from other jurisdictions in holding that the insurer need not establish prejudice in order to avoid liability by asserting the defense of non-coverage *864 due to the insured's failure to comply with policy provisions to notify or forward suit papers as conditions precedent to coverage. However, the court expressly noted the extreme prejudice involved in that case where the demand on the insurer was to pay a default judgment rendered against the insured where it had been deprived of its right to defend the action by the insured's failure to forward process.
The Hallman case, rendered by our brethren on the Second Circuit, was handed down prior to our opinion in Pomares. Further, the Hallman case was not rendered in accordance with the Supreme Court's pronouncements in West, as West is not mentioned in the Hallman opinion. To the contrary, the Pomares decision rests squarely on the reasoning in West. Therefore, we will follow the reasoning in Pomares and West concerning the rule of law governing this case. The third party tort victim's claim against a defendant insurer will be recognized despite the lack of notice of process to the insurer by its insured as required by the policy as a condition precedent to coverage, unless the defendant insurer proves sufficient prejudice to defeat plaintiff's claim.[1]
In the instant case, OMI has met its burden of proving sufficient prejudice to defeat the third party's claim against it at this juncture. Plaintiff is seeking payment of a default judgment entered against P.J. in a case where P.J. did not notify OMI that he had been sued and there was no showing that OMI received notice from any other source and, therefore, the insurer did not have opportunity to appear in the case and present a defense. Under the facts presented, the insurer was very active in the case in providing plaintiff his maintenance and cure payments and in settlement negotiations. There is no doubt that had OMI known of the suit against its insured it would have presented a defense to the case. As stated in Hallman,
... it would be difficult to conceive of greater prejudice, and of a confiscatory result being reached, than a demand for payment of a default judgment of which a defendant is totally ignorant, and which, through the failure of the assured to comply with the terms of the contract and forward the process and pleadings to the insurer, it has been deprived of its right to defend the action.
Therefore, under the facts presented in this case, where plaintiff's right to recover against the insurer is derived from the insurer's liability to the insured, and the insured failed to provide the insurer with notice of the suit, depriving the insurer of its right and opportunity to defend the action, the insurer has proven sufficient prejudice to defeat the third party's action against it.[2]
We find no merit in plaintiff's third argument that the notice of suit provision in the policy was effectively waived by OMI because of the insurer's failure to make reasonable inquiry of their insured regarding service of suit. OMI had notice of the injury, had paid maintenance and cure benefits to plaintiff and had attempted to negotiate a settlement of the case. OMI was never notified that plaintiff had thereafter filed suit against P.J. The insurance policy provisions, which constitute the law between the parties, required that the insured notify the insurer if suit was filed. OMI reasonably relied on the policy provision and did not waive its rights under the policy by not making independent inquiry as to whether suit had ever been filed by plaintiff.
Accordingly, the judgment of the district court, dismissing plaintiff's action against *865 OMI, is affirmed and costs of appeal are assessed against plaintiff.
AFFIRMED.
NOTES
[1] We note that the result in Hallman is consistent with this interpretation of the law. The court in Hallman noted the extreme prejudice to the insurer caused by the insured's failure to comply with the policy notice provisions, allowing a default judgment to be obtained by the plaintiff against the insured without knowledge of the insurer and an opportunity to furnish a defense to the claim.
[2] We expressly do not address herein plaintiff's right to assert a claim against the insurer under a direct action statute. If such a lawsuit was brought, where the insurer was given the opportunity to present a defense to the claim, the out-come might well be different.