TERRI F. LOVE, Judge.
J^This appeal arises from the alleged wrongful murder conviction of the plaintiff. The chief investigator allegedly suborned perjury and withheld exculpatory evidence, which resulted in an acquittal of the plaintiff at his second trial. The plaintiff sued the sheriffs office and the chief investigator in federal court and received a multimillion dollar judgment. The plaintiff later learned of and sued an excess insurer twenty-four years after the murder. The excess insurer filed a motion for summary judgment claiming that it was released in a partial settlement and that it was prejudiced by the delay of notice. The trial court granted the motion for summary judgment and the plaintiff appealed. We find that genuine issues of material fact exist as to whether the excess insurer suffered actual prejudice and whether the excess insurer was released in the partial settlement. We therefore reverse and remand.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1980, a body was found under the West Pearl River Bridge in St. Tammany Parish, Louisiana. Gary Hale (“Mr. Hale”) was the chief investigator on the homicide from the St. Tammany Parish Sheriffs Office (“STPSO”). Gerald Burge (“Mr. Burge”) was convicted of the murder in 1986. Around 1990, the 12family of Mr. *619 Burge learned that Mr. Hale withheld exculpatory evidence and allegedly suborned the perjury of the murder victim’s widow[1] and mother-in-law. In 1991, Mr. Burge filed a lawsuit in federal court for wrongful imprisonment, malicious prosecution, and other state law torts. Subsequently, in 1992, Mr. Burge was retried and found not guilty of the murder.
The American Druggist Insurance Company (“ADIC”) insured the STPSO and Mr. Hale from September 1, 1980 through September 1, 1983, for $100,000 per occurrence. However, ADIC became insolvent and Northwestern National Insurance Company (“NNIC”) assumed responsibility for ADIC’s policies through a “cut-through” reinsurance endorsement. In 2000, Mr. Burge entered into a “Receipt, Partial Settlement and Indemnification Agreement with Reservation of Rights,” which stated, in part:
IT IS HEREBY AGREED that GERALD BURGE, in exchange for and in consideration of the total sum of SEVENTY-FIVE THOUSAND AND NO/ 100 ($75,000.00) DOLLARS, ... does hereby release and discharge NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, INC. (Northwestern) and AMERICAN DRUGGISTS INSURANCE COMPANY (American Druggists), together with all their predecessors, successors and assigns from any and all liability of any type or nature whatsoever, ... except that I reserve my right to proceed against Sheriff Patrick Canulette, in his official capacity, and Gary Hale to pursue recovery of punitive damages.
IT IS FURTHER AGREED that payment ... shall release, acquit and discharge Patrick Canulette, individually and/or in his official capacity, his sueees-sors in office, any agent, insurer and/or employee of Canulette in his official capacity (the Sheriff) and Gary Hale for all damages, costs, legal interest and attorney’s fees, except punitive damages, for any tortious act or conduct of the Sheriff, his successors in office, any agent or employee of Canulette in his official capacity, and/or Gary Hale | ¿which occurred between September 1, 1980 and September 1, 1983 and which may give rise to any legal liability of the Sheriff and/or Hale in favor of Burge during that time period for any claims by Burge for personal injury, false arrest, wrongful imprisonment, wrongful conviction, malicious prosecution, negligence, negligent and/or intentional infliction of emotional distress, spoliation of evidence, violation of civil rights and/or violation of Gerald Burge’s rights ... including any other damages or injury of whatever nature or kind during that time period, except punitive damages, as well as any and all liability the Sheriff and/or Hale might have for costs and/or attorney’s fees, or legal interest due Burge as a result of any tortious or wrongful conduct by the Sheriff and/or Hale or any employee or agent of the Sheriff which occurred between September 1, 1980 and September 1,1983.
IT IS FURTHER AGREED AND UNDERSTOOD that the release of the Sheriff and Hale by Burge is a partial release and that Gerald Burge specifically reserves his rights to proceed against the Sheriff and Gary Hale for any liability for punitive damages which may be owed ... from September 1, 1980 and September 1, 1983. Further, Burge specifically reserves his rights to proceed against the Sheriff and Hale and any others (excluding Northwestern and *620 American Druggists) for any and all damages of any type whatsoever which the Sheriff, his agents, insurers, employees, Hale and/or any other may owe to Burge for tortious conduct and damage which occurred and arises after September 1,1983....
In May 2001, the federal jury found that Mr. Hale committed tortious actions between September 1, 1980 through September 1, 1983; September 1, 1983 through September 1, 1986; and after September 1, 1986. The federal jury awarded Mr. Burge $4,150,000, which was reduced to $4,075,000, plus legal interest, court costs, and attorney’s fees in order to reflect Mr. Burge’s previous settlement amount for the 1980 through 1983 time period. The STPSO’s liability was reversed on appeal, leaving Mr. Hale liable for $4,075,000. In April 2004, during bankruptcy proceedings for Mr. Hale in federal court, Mr. Burge learned of an excess insurance policy issued by Lincoln Insurance Company (“Lincoln”), | Awhich provided $900,000 in excess coverage for Mr. Hale and the STPSO from September 1, 1980 through September 1,1983.[2]
Mr. Burge then filed a petition for damages against NNIC; Lincoln; Claire Trinchard (“Ms. Trinchard”); and Leigh Ann Schell (“Ms. Schell”);[3] alleging misrepresentation and concealment of the Lincoln policy. Mr. Burge sought $900,000, plus interest, from Lincoln, and $925,000, plus interest, from NNIC, Ms. Trinchard, and Ms. Schell, “jointly, severally, and solidarity.”
Lincoln filed a motion for summary judgment asserting that any claim Mr. Burge had against it was “settled, fully compromised and dismissed.” Lincoln also contended that the delay in notice constituted prejudice because it was prevented from presenting a defense in Mr. Burge’s federal lawsuit. The trial court granted Lincoln’s motion for summary judgment finding actual prejudice to Lincoln and that Mr. Burge’s claims were fully compromised, settled and dismissed without a reservation of rights against excess insurers. Mr. Burge’s devolutive appeal followed.

STANDARD OF REVIEW

Appellate courts review summary judgments de novo. Larkins v. David Wilkerson Constr., 08-0576, p. 5 (La.App. 4 Cir. 12/17/08), 3 So.3d 67, 70. A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The mover bears the burden on a motion for summary judgment. La. C.C.P. art. 966(C)(2). | ¿However, if the mover will not bear the burden of proof at trial, he must “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). If the plaintiff then “fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2).

*621
SUMMARY JUDGMENT

Lincoln contends that no genuine issues of material fact exist to disprove that Mr. Burge waived his claims when he released Mr. Hale and NNIC and that the late notice of the claim prejudiced its defense. Contrarily, Mr. Burge asserts that Lincoln was notified “as soon as practicable” and that Lincoln failed to prove actual prejudice.

Partial Settlement and Release

Mr. Burge avers that his settlement could not have released Lincoln, as an excess insurer, because none of the parties were aware of the Lincoln policy at the time of the partial settlement agreement. Mr. Burge released ADIC and NNIC and partially released Mr. Hale and Sheriff Canulette. Lincoln alleges that it was released because a reservation of rights against an excess insurer was not included in the settlement. However, the settlement did not include the statement that Mr. Burge intended to release all insurers.
The interpretation of a contract requires “the determination of the common intent of the parties.” La. C.C. art. 2045. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. Additionally, |,“[although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.” La. C.C. art. 2051. “A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” La. C.C. art. 3071. “A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.” La. C.C. art. 3076.'[4] “It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties’ true intent.” Brown, v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748.
“When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle.” Ortego v. State, Dep’t of Transp. and Dev., 96,1322 (La.2/25/97), 689 So.2d 1358, 1363-64. A motion for summary judgment “is rarely an appropriate procedure for determining intention.” Hall v. Mgmt. Recruiters of New Orleans, Inc., 332 So.2d 509, 511 (La.App. 4th Cir.1976). The “defendant bears the burden of establishing the requisites for a valid compromise, including the intent to settle the differences being asserted in the action in which it is interposed.!’ Smith v. Walker, 96-2813, p. 9 (La.App. 1 Cir. 2/20/98), 708 So.2d 797, 802.
The Louisiana Supreme Court held that an injured party did not intend to release a non-settling, excess insurer when the settlement and release included other settling insurers. Futch v. Fidelity & Cas. Co. of New York, 246 La. 688, 166 So.2d 274, |7277 (1964). In Brown, the Louisiana Supreme Court held that extrinsic evidence can be examined for the interpretation of a settlement agreement when the record shows:
(1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or *622 that the releasor did not intend to release certain aspects of his or her claim.
Brown, 93-1019, 630 So.2d at 749. The Brown settlement did not specifically address, with a reservation or otherwise, wrongful death claims, which the court found were not settled. Brown, 93-1019, 630 So.2d at 756-57. “[Differences which the parties do not intend to settle are unaffected by a compromise agreement.” Brown, 93-1019, 630 So.2d at 757. Likewise, in the case sub judice, the settlement did not specifically address claims against unknown excess insurers and Mr. Burge asserts that he did not release Lincoln.
Mr. Burge’s partial settlement includes language indicating a reservation of rights, which follows:
Further, Burge specifically reserves his rights to proceed against the Sheriff and Hale and any others (excluding Northwestern and American Druggists) for any and all damages of any type or nature whatsoever which the Sheriff, his agents, insurers, employees, Hale and/or any others may owe to Burge for tor-tious conduct and damage which occurred and arises after September 1, 1983, including any claims for costs or attorney’s fees that arise as a result of tortious conduct or damages which occurred after September 1,1983.
Lincoln was not a party to the settlement. Mr. Burge contends that he never intended to release an unknown excess insurer. This argument comes under the second prong of Brown because Mr. Burge may not have intended to “release certain aspects of his or her claim.” The record reflects that neither Mr. Hale nor |sMr. Burge were aware of the excess Lincoln policy until 2004. Accordingly, Mr. Burge may not have settled his claims against an unknown insurer. Therefore, we find that a genuine issue of material fact exists as to the true intent of Mr. Burge and whether Lincoln was released for Mr. Hale’s actions before or after September 1, 1983. See Rollins v. Richardson, 02-0556 (La.12/4/02), 833 So.2d 921.

Occurrence

Mr. Burge contends the Lincoln insurance contract was an “occurrence policy” and encompassed Mr. Hale’s tortious conduct even after the policy period ending September 1, 1983,[5] due to the contractual language describing an occurrence. Additionally, the settlement reserved Mr. Burge’s rights for damages occurring after September 1, 1983. Mr. Burge alleges that the occurrence that triggered NNIC’s policy was the murder on or about October 17,1980. The Lincoln policy stated:
2. Policy Period: termination of underlying insurance: This policy applies to an injury or destruction taking place during this policy period provided that when the Immediate Underlying Policy insures occurrences taking place during this policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences during this policy period and “occurrences” is substituted for “injury or destruction” under the Provisions Governing part of this policy.
Further, Mr. Burge avers that Lincoln adopted the “occurrence” language utilized by NNIC, which allegedly later amended the definition of occurrence to include “incident,” that included “any subsequent acts which directly relate to or arise out of the original crime of complaint.” Mr. Burge asserted in his supplemental [ ^opposition(i *623 to Lincoln’s motion for summary judgment before the trial court that NNIC’s amended language included that an “occurrence” “means an accident, including continuous or repeated exposure to conditions.... ” Mr. Burge further contended that the policy included that an “occurrence” could “be a happening or series of happenings arising out of one event taking place during the policy period.[6]
The Louisiana Supreme Court determined in Davis v. Poelman, 319 So.2d 351, 354 (La.1975), that an insurance company was liable for damages that happened outside of the policy period and after the first “occurrence,” which was within the policy period. Similarly, we find that genuine issues of material fact exist as to whether Lincoln’s policy covered Mr. Burge’s damages before and/or after September 1, 1983.

Prejudice

Mr. Burge asserts that Lincoln was notified as soon as he became aware of the policy and that Lincoln failed to prove actual prejudice. Conversely, Lincoln contends that the passage of time and the inability to participate in trial proceedings constitute sufficient prejudice.
“As a general rule, an insurer may not raise the failure of its insured to give notice of the accident or suit as a valid defense to claims of an injured third party.” Haynes v. New Orleans Archdiocesan Cemeteries, 01-0261, p. 4 (La.App. 4 Cir. 12/19/01), 805 So.2d 320, 323. “The third party tort victim’s claim against a defendant insurer will be recognized despite the lack of notice of process to the insurer by its insured ... unless the defendant insurer proves sufficient prejudice to defeat plaintiffs claim.” Elrod v. P.J. St. Pierre Marine, Inc., 95-295, p. 11 (La. |App.10 5 Cir. 10/31/95), 663 So.2d 859, 864.
-*-n Fakouri v. Ins. Co. of N. Am,., 378 So.2d 1083 (La.App. 3rd Cir.1979), the plaintiff, a third party, discovered a previously unknown excess policy after trial and informed the insurer. The court held that since the insurer “intended to avoid being a party to any lawsuit involving the insured, so holding it liable to pay the excess of the Jefferson Parish judgment does not prejudice INA in any way but, rather, is consistent with the very terms of the policy.” Fakouri, 378 So.2d at 1087.
Mr. Burge alleges that the Lincoln policy contained language precluding it from becoming a co-defendant, similar to the language analyzed in Falcouri, which negates prejudice. Lincoln avers that the “passage of time, death, and fading memories of the operative facts” would require it to “reinvent the wheel” to defend the claims asserted against Mr. Hale. However, Lincoln did not attach anything to prove the alleged prejudice aside from the assertions in the motion. Additionally, Lincoln claims that prejudice from the inability to defend was proven because the STPSO was released from liability. This argument is misplaced, as the claims asserted against the STPSO require different factual and legal elements for a finding of liability.[7] Given that Lincoln did not present evidence of prejudice aside from its assertions, we find that genuine issues of material fact exist as to whether Lincoln suffered actual prejudice.

*624
DECREE

Given the foregoing, we find that genuine issues of material fact exist as to whether Mr. Burge’s claims against Lincoln were released and whether Lincoln | n suffered actual prejudice. We reverse and remand for further Proceedings,
REVERSED,

. Following the murder, Mr. Hale married the victim's widow.

. Lincoln states, in its appellee brief, that the Lincoln policy ended September 1, 1981. However, its own statement of uncontested facts in the record state that the policy period ended September 1, 1983.

. Claire Trinchard and Leigh Ann Schell were hired by NNIC to represent Mr. Hale and Sheriff Patrick Canulette; however, Mr. Hale was not represented by counsel at trial.

. The current La. C.C. art. 3076 was revised in 2007 to reproduce the substance of La. C.C. art. 3073 and was not intended to change the law.

. The federal jury found that Mr. Hale's tor-tious actions occurred during Lincoln's policy period and continued until after September 1, 1986.

. This Court recognizes that trial court mem- *623 oranda are not representative of the actual NNIC policy. However, this Court takes notice that Lincoln did not contest the alleged amended language.

. In order to prove liability of the STPSO, a pattern of civil rights violations and/or withholding of exculpatory evidence by the STPSO as an entity pursuant to 42 U.S.C. § 1983, must be proven.